**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In Re Ex Parte Application of BAYERISCHE MOTOREN WERKE AG, | ) ) ) |
| Applicant, | ) **Case No. 22 C 2103** ) |
| For an Order Pursuant to 28 U.S.C. Section 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceeding, | ) **Magistrate Judge Jeffrey Cole** ) ) |

**MEMORANDUM OPINION AND ORDER**

Bayerische Motoren Werke Aktiengesellschaft ("BMW"), German company, has filed an *ex parte* Application for an Order to Obtain Discovery in a German proceeding pursuant to 28 U.S.C. § 1782(a) from American Company Magnetar Capital ("Magnetar").

BMW's application is a patchwork quilt of five filings covering about 170 pages: a Declaration from BMW's German attorney to which the actual application is attached as an exhibit along with the proposed discovery requests and a proposed Order [Dkt. #4]; a Declaration from BMW's American attorney from a law firm in Virginia along with German and English versions of the Complaint against BMW, contact information for Magnetar, an article about the patentability criterion of inventive step/non-obviousness, and a German Patent Court decision [Dkt. #5]; a memorandum of law in support of BMW's application with the requests for production attached as exhibits [Dkt.#6][1]; a notice of supplemental authority with no supplemental authority attached [Dkt. #10]; and a notice of supplemental authority with the supplemental authority attached [Dkt. #12].

---

[1] BMW's Memorandum, which cites 31 Federal cases, 2 State cases, 2 Statutes and 3 Federal Rules, was filed in violation of Local Rule 7.1("Neither a brief in support of or in opposition to any motion nor objections to a report and recommendation or order of a magistrate judge or special master shall exceed 15 pages without prior approval of the court.").

So, it's a bit of a chore to sift through, and toggle back and forth among the documents, in order to assess BMW's application for what it assures the court is "routinely granted discovery." [Dkt. #6, at 3]. *See Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006)("An advocate's job is to make it easy for the court to rule in his client's favor . . . .").

Through it all, BMW asks for an Order authorizing it to serve subpoenas on Magnetar requiring it to provide certain documents and make itself available for a deposition for use in connection with a patent infringement action in Germany, and a corresponding nullity action (apparently, the equivalent of an invalidity defense or counterclaim in the U.S.) that BMW says it intends to file.

The plaintiff in the German litigation is an Irish "patent assertion entity" called Arigna Technology Limited. BMW is coming here to target American company, Magnetar, with a pair of subpoenas because, BMW claims, Magnetar invests in "patent monetization entities and intellectual property portfolios, including . . . the portfolio Arigna asserts against BMW." [Dkt. #6, at 1]. The first of BMW's proposed subpoenas makes five document requests:

> 1. All documents, communications, and things discussing or mentioning the Asserted Patent, any Related Applications, or any portfolios containing the same, including attachments or exhibits to those documents.
>
> 2. All documents, communications, and things, relating to any agreements, contracts, business arrangements, partnerships, investments, funding arrangements, financial agreements, or joint ventures between Magnetar and Atlantic IP, Arigna, or any related entity.
>
> 3. All documents, communications, and things relating to Atlantic IP, Arigna, including any litigation funding or investments in the Asserted Patent or any Related Applications.
>
> 4. All documents, communications, and things relating to the actual, perceived, or expected value of the Asserted Patent or any Related Applications, including

documents discussing Magnetar's expected, promised, or anticipated return on its investment or funding in the patents the Asserted Patent or any Related Applications.

5. All documents concerning any analyses or evaluations of the scope, strength, or value of the Asserted Patent or Related Applications, whether individually or in combination with any other patents or applications, or any portfolio containing the Asserted Patent or any Related Applications, including any analyses or evaluations of the prior art, validity, infringement, or likelihood of success of litigation of the same.

[Dkt. # 6-1].

The second proposed subpoena is for a deposition at which BMW wants to inquire into the following topics:

1. The documents and other materials produced in response to in BMW AG's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and the efforts to collect and produce such documents and other materials.

2. Your interest, including financial interest, in the Asserted Patent, and any representations to your partners, investors, shareholders, employees, or directors regarding the same.

3. Your relationship, agreements, and communications—financial or otherwise—with Atlantic IP, Arigna, and any related entities.

4. The financial or economic value of the Asserted Patent or Related Applications, or any portfolio containing the same.

5. The strength or scope of the Asserted Patent or Related Applications, or any portfolio containing the same, as it relates to prior art, validity, infringement, or likelihood of success of litigation.

[Dkt. #6-2].

Section 1782(a) of Title 28 authorizes a district court to order a person within the district to give testimony or produce documents "for use in a proceeding in a foreign or international tribunal." *Servotronics, Inc. v. Rolls-Royce PLC*, 975 F.3d 689, 690 (7th Cir. 2020). German courts – like

3

other European courts – do not, of course, allow the expansive, time-consuming, and expensive discovery that is common in American litigation. *Heraeus Kulzer*, 633 F.3d at 594. Thus, it seems odd that Congress chose to allow foreign parties to call on American judicial resources in order to take advantage of American-style discovery for use in foreign proceedings without any connection to America. Supposedly, the purpose was to "set[] an example to encourage foreign countries to enlarge discovery rights in their own legal systems." *Heraeus Kulzer*, 633 F.3d at 594.

Section 1782(a) has been around for a long while so one wonders how that is going; whether any European systems have embraced the example of wide-open American discovery, which American courts have variously called "a runaway train," *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 901 (7th Cir. 1981) – "a monster on the loose," *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986) – and "the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000). One guesses not.

According to BMW, the evidence it is seeking is "critical for [its] arguments and defenses." [Dkt. #6, at 5]. It then says that, without such evidence, the German proceeding will be patently unfair. [Dkt. #6, at 9]. So, the German court is cutting the German company off from evidence *critical* to its defense? Are all German patent cases that don't involve American-style discovery similarly unfair? It seems a bit hyperbolic. As Germany has steadfastly clung to its preferred and time-tested version of discovery, it is a bit strange that the brief of such a well-known and highly regarded German company would paint such a dismal picture of the court system there.

In any event, based on the language of § 1782, Congress doesn't expect an applicant to show much. Courts may grant an application when the following statutory requirements are satisfied: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to

which the application is made, (2) the discovery be for use in a proceeding before a foreign tribunal, and (3) the application be made by a foreign or international tribunal or any interested person. *See, e.g., Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011).

BMW says in its memorandum that Magnetar is headquartered and has its principal place of business in Evanston, Illinois. In support, BMW attaches a screenshot from Magnetar's website to another document it has filed – a Declaration from one of its lawyers – showing Magnetar has offices in Evanston, Houston, and London. [Dkt. #5-3]. As such, it is "found" in this district. The discovery is also sought for use in a proceeding in a foreign tribunal, the German action that Arigna has brought against BMW, as well as the related nullity proceeding. And, finally, it cannot be disputed that, as a party in the German litigation, BMW is an interested person. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004)("No doubt litigants are included among, and may be the most common example of, the 'interested person [s]' who may invoke § 1782 . . . ."). So, the statutory conditions are rather easily satisfied, as would be expected in an *ex parte* application.

But, a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so. *Intel Corp.*, 542 U.S. at 264. With that in mind, the Supreme Court has set forth a handful of "factors that bear consideration in ruling on a § 1782(a) request." *Intel Corp.*, 542 U.S. at 264. (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the discovery request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; and

(4) whether the discovery requested is unduly intrusive or burdensome.  *Intel Corp.*, 542 U.S. at 264–65.  As for the first factor, Magnetar – while related to Arigna through a firm called  Atlantic IP in that familiar, convoluted, corporate way that knows no borders -- is not a participant in the German litigation.

The second factor doesn't lead convincingly in either direction.  While the Supreme Court did suggest that  district courts "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," *Intel Corp.*, 542 U.S. at 264, the Court also advised that:

> Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here. Comparisons of that order can be fraught with danger.

*Intel Corp.*, 542 U.S. at 263.  Here, all we have on the receptivity of a German court to the U.S. brand of expansive discovery is the unsurprising word of BMW's expert witness that it would be receptive. [Dkt. #4, ¶ 22].  On the other hand, as the Seventh Circuit has remarked, there is a danger of "clogging" a German court "with the random harvest of the American discovery." *Heraeus Kulzer*, 633 F.3d at 595.

Obviously, courts have suggested that this type of exercise is unsatisfying in terms of providing a definitive answer.  *See, e.g., Heraeus Med. GmbH v. Biomet, Inc.*, No. 3:20-CV-802-JD-MGG, 2021 WL 4133710, at *6 (N.D. Ind. Sept. 10, 2021)("With only the declarations of Petitioners' counsel, the Court cannot conclude that the foreign tribunals would reject the evidence at issue in Petitioners' Application. Therefore, this factor is equivocal and neither

favors nor disfavors granting Petitioners' Section 1782 Application."). Were this not an *ex parte* proceeding, it is expected that an expert witness from the opposing side would present an opposing view. *See, e.g., In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006)("It is unnecessary for me to further explore these polar differences in expert opinion, because after having carefully reviewed the German court decisions and the experts' respective affidavits, in the end the Court is left without an answer as to which expert is correct."); *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. CIV1:08CV269LEK/RFT, 2008 WL 3884374, at *6 (N.D.N.Y. Aug. 18, 2008)("The disagreement between the parties is substantial. Although the effort to provide this Court with this various perspectives interpreting German law is laudatory, both parties should have known that both the Supreme Court and the Second Circuit have repeatedly denounced such a practice and that such endeavor may be meaningless."). But, as the Second Circuit has advised, courts cannot be expected to reach definitive conclusions under these circumstances. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099–100 (2d Cir. 1995)(". . . we do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the "twin aims" of the statute.").

The third factor asks whether the discovery request conceals an attempt to circumvent foreign proof gathering restrictions. Again, we have little to go on aside from BMW's and its expert's assurances that it does not.

That leaves the fourth factor, which is common to all American discovery disputes: whether the discovery requested is unduly intrusive or burdensome. The requests here are typically broad as many discovery requests are in American litigation. But that doesn't necessarily mean they are

"burdensome" or "intrusive." We know nothing about German patent litigation, of course, but BMW and its expert claim that information regarding purchase, license, settlement agreements and negotiations, and litigation funding and Arigna's capitalization is relevant to Arigna's German "value-in-dispute claims." Arigna represented that the value-in-dispute is only 1M €. BMW thinks that's low, and says the foregoing information can be the basis of a more fairly calculated reasonable royalty rate for any licenses of the asserted patent. We are also told that German courts use the "value-in-dispute" to calculate attorneys' fees which are granted, as a rule, at the end of the case. BMW and its expert also claim that previous licenses, licensing attempts, purchase agreements, purchasing negotiations, and internal documentation related to the same (discoverable only by examining Magnetar's relevant communications and documents) are also relevant to the commercial/market success of the patent at issue; we are told German courts examine this when evaluating the inventive step and indicia of obviousness of a patent to decide its validity. [Dkt. #5-4; Dkt.# 4, ¶ 16]. BMW cites some cases indicating that this type of discovery is relevant to American patent litigation – *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012)(settlement agreements); *Koninklijke Philips N.V. v. Wangs All. Corp.*, No. CV 14-12298-DJC, 2018 WL 283893, at *5 (D. Mass. Jan. 2, 2018)(correspondence with licensees); *High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2011 WL 3241432, at *5 (D. Kan. July 29, 2011)(correspondence with third parties related to licensing negotiations) – but, as for German litigation, we have, again, just the word of BMW's expert. ]

All that can be said on this basis is that BMW has made an arguable case for the relevance of the discovery, and the other discretionary factors do not necessarily work against its application. But as this is only a request to authorize subpoenas and not a ruling under Fed.R.Civ.P. 45, BMW's

application is granted. BMW may want to take another look at its requests in view of Fed.R.Civ.P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.").

ENTERED: _____
                    UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/5/22